EDWARD HINMAN and Another, as Executors, etc., of WILLIAM HINMAN, Deceased, Plaintiffs, *v.* LORETTA CARUTHERS and Others, Defendants, Impleaded with EDWARD PANCHARD, Respondent, and HARVEY S. SOUDER, Assignee of GODSHALL ESTATE, Appellant.

Second Department, December 23, 1925.

Mortgages — foreclosure — surplus-money proceeding — petition by assignee of second mortgage to have surplus paid to him — second mortgage was paid but not satisfied of record and subsequently revived as collateral for loan — holder of third mortgage estopped by recognition of second mortgage and agreement to pay it — holder of second mortgage entitled to surplus.

In surplus-money proceedings on the foreclosure of a first mortgage on real property, the holder of a second mortgage which had been paid but not satisfied of record and which was subsequently revived and delivered as collateral security for a loan to the present holder, is entitled to the surplus as against the holder of

a third mortgage, for it appears that the holder of the third mortgage recognized the validity of the second mortgage at the time it was revived and agreed to pay it.

Appeal by Harvey S. Souder from an order of the County Court of the county of Queens, entered in the office of the clerk of the county of Queens on the 25th day of July, 1924, confirming the report of a referee in surplus money proceedings.

*Allen Caruthers,* for the appellant.

*Rodney T. Martinsen,* for the respondent.

Rich, J. The action was brought for the foreclosure of a $5,500 first mortgage covering certain premises at Winfield, Queens county, N. Y., made by the defendants Caruthers to plaintiffs. It was commenced January 7, 1919, proceeded to judgment of foreclosure and sale, and the premises were sold on September 12, 1919, to the defendant Panchard for $8,950, the sale resulting in a surplus of $295.47. The defendant Souder, assignee of a second mortgage, thereafter petitioned the court for an order directing the payment of the surplus to him, which was referred to a referee to hear and determine.

While the record presents a rather complicated situation, if the events which determine the rights of the parties are considered in their chronological order, the disposition of the question as to who is entitled to this surplus money is to a great extent simplified. On July 1, 1912, the defendants Caruthers, the holders of the record title, executed a *second* mortgage for $1,000 to Abraham Godshall (whose executors are parties defendant to this action). On *May 22, 1913,* defendants Caruthers executed another and *third* mortgage for $800 to one Elizabeth Kuehner, which mortgage was subsequently, and on October 25, 1916, assigned to defendant Panchard. A satisfaction of the Godshall *second* mortgage was delivered to Caruthers together with the bond and mortgage, *on January 11, 1918,* in payment for legal services rendered to the mortgagee, but the satisfaction was not recorded. On May 18, 1918, defendant Panchard commenced the foreclosure of his third mortgage, in which action defendants Godshall as executors were not made parties, which proceeded to judgment on January 15, 1919, but the premises were not sold because of the commencement of an action for the foreclosure of the first mortgage. On July 9, 1918, the defendants Souder and Godshall loaned Caruthers $1,000 by furnishing him with a note which he negotiated, and Caruthers delivered to them the second mortgage, bond and satisfaction as collateral. Caruthers was unable to pay this note when due, and on February 10, 1919, he arranged to borrow $1,000

from the defendant Souder, and as collateral delivered to him the bond, mortgage, satisfaction, and an assignment thereof, together with two letters from the attorney for defendant Panchard, in which the latter agreed for a nominal sum to accept a deed of the property from Caruthers and to pay off the *second* mortgage which had been pledged for a loan. Caruthers, pursuant to the letters, produced the satisfaction, bond and mortgage, together with a deed, at the office of Panchard's attorney, but they were not accepted. Souder, it appears, was also shown the letters in question, and informed by Caruthers that Panchard had promised to pay the second mortgage.

The referee reported that the surplus moneys belonged to the defendant Panchard, the owner and holder of the *third* mortgage, on the ground that, assuming that the *second* mortgage held by defendant Souder had been revived, the rights of the *third* mortgagee had so intervened upon the extinguishment of the second mortgage on January 11, 1918, that Panchard's mortgage became a second mortgage. The report was confirmed by the County Court, and from the order entered thereon defendant Souder appeals.

Panchard admits he never saw Caruthers until long after he purchased the third mortgage, and that it was *two* years thereafter that he claims Caruthers told him the *second* mortgage had been paid, although he says that at the time he purchased the third mortgage, the broker represented that it would be paid. But Caruthers, while admitting that he told Panchard two years afterwards that the second mortgage had been paid, asserts that he also told Panchard that it had been revived and hypothecated as collateral for a loan, and the estoppel certificate which was not delivered until long after Panchard purchased the third mortgage, recites that Panchard's mortgage is a valid *third* lien.

The fact that the satisfaction of the mortgage was delivered to Souder with the assignment, while it may imply knowledge on his part that the mortgage had been once paid, is unimportant in view of the fact that there was delivered with the assignment of the bond, mortgage and satisfaction, the letters of Panchard's attorney in which on Panchard's behalf he recognized the second mortgage as a valid lien and agreed to pay it. To hold, as the learned referee has held, that the defendant Panchard is an intervening creditor, under the circumstances, is inequitable, for it was undoubtedly upon the faith of these letters that Souder advanced the $1,000 to Caruthers, and on the faith of Panchard's admission that the mortgage delivered as collateral was a valid lien prior to his and would be paid by him.

Second Department, December, 1925.      [Vol. 215

It follows that the order appealed from should be reversed on the law and the facts, with ten dollars costs and disbursements, and judgment directed for the appellant Souder for the amount of the surplus moneys, with costs, subject to the payment of the referee's fees.

Kelly, P. J., Jaycox, Manning and Kelby, JJ., concur.

Order of the County Court of Queens county reversed on the law and the facts, with ten dollars costs and disbursements, and judgment directed for the appellant Souder for the amount of the surplus moneys, with costs, subject to the payment of the referee's fees. New findings to be settled on notice.